## Seaboard Oil Company v. Huntsman.

(Decided May 26, 1922.)

### Appeal from Allen Circuit Court.

1. Corporations—Statements of One Claiming to be Agent—Evidence. —The statements of one claiming to be an agent of a corporation cannot be introduced in evidence either to establish the fact of agency or to show the extent of the agent's authority, but, where they are admitted without objection, it is too late to complain of the testimony on appeal.

2. Corporations—Officers—Agency—Evidence.—Proof that the chief executive officers of a corporation entered into a contract claiming to represent the corporation and stating in the contract that they were acting for themselves and others, in connection with evidence showing that the corporation took possession of the property and used it and there was issued to the other contracting party a voting certificate for 500 shares of the stock of the corporation as provided in the contract, is sufficient evidence to go to the jury on the question of the officers' agency for and authority to represent the corporation.

3.  Damages—Breach of Contract.—Where a party to a contract agrees to pay to the other party a stated commission from the sale of the securities of the purchasing company, after having first paid the costs incurred in acquiring mining property transferred to the purchasing company, but fails and refuses to sell the securities issued in payment for the property and places them in escrow so that it is impossible to carry out the terms of the contract, there is a breach of the contract for which the other party may recover damages.

4.  Evidence—Competency—Value of Oils.—Evidence by one who was superintendent of a pipe line through which the oil from certain property was transported and who was familiar with the prices and quantities of oil taken from the property during the period in controversy, but did not possess complete records of the output of oil from the property, was competent as tending to show the value of the oil taken during that time and justified the submission of the case to the jury on the question as to whether or not the receipts from the sale of oil had amounted to more than the expenditures made in acquiring the property.

5.  Pleading—Breach of Written Contract—Amendments.—Where one sues for the breach of a written contract set up in the petition, it is not error to permit him to file an amended petition in which it is averred that by mutual mistake a part of the contract entered into was not incorporated into the writing set up in the original petition, the amendment merely seeking to supply an omission in the contract originally sued on.

GARNETT & VANWINKLE and HARPER & DENTON for appellant.

OLIVER & DIXON for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

R. O. Huntsman filed suit for $9,500.00 against the Seaboard Oil Company, J. H. McClurkin, E. T. Dickson and C. R. Dickson in the Allen circuit court, for the breach of a contract alleged to have been made on the 26th day of February, 1919. The contract as set out in the original petition is as follows:

"THIS AGREEMENT, entered into this 26th day of February, 1919, by and between Rory O. Huntsman, party of the first part, and J. H. McClurkin, C. R. Dickson and E. T. Dickson for themselves and others, parties of the second part.

"WITNESSETH, that whereas said first party has the oil properties of the Oklahoma Producing and Refining Company, in Allen county, Ky., for sale and

"WHEREAS, said second parties are desirous of purchasing same for themselves and others,

"Now, THEREFORE, in consideration of the sum of one dollar and other good and valuable consideration, the receipt of which is hereby acknowledged, duly paid to first party by the second parties, it is hereby agreed that in the event said second parties acquire said oil properties by reason of the introduction of the second parties to the owners by said first party, that a commission of 10% of the amount paid owners for said property shall be paid said first party by the second parties, said commission to be payable out of the receipts from sales of securities of the purchasing company after the amounts advanced by said second parties and their associates shall have been returned to them from said sales.

"As the sum of three thousand dollars in cash is due and payable for certain expenses in connection with the acquiring of the option upon closing the sale, it is hereby agreed that second parties shall pay to first party said sum of three thousand dollars on or before the expiration of ten days after a satisfactory gauge and formal acceptance of same and the payment of the first installment on the purchase price.

"WITNESS our hands and seals, this 26th day of February, 1919, at Scottsville, Ky.

"R. O. HUNTSMAN,
Party of the first part.
JOHN H. McCLURKIN,
E. T. DICKSON,
C. R. DICKSON,
Parties of the second part.

"It is further agreed that five thousand dollars par value of stock of the Seaboard Oil Co., shall be issued said first party as part consideration of the transaction, said certificate to be issued upon completion of the payments."

By an amended petition Huntsman alleged that the written agreement failed to state the entire contract between the parties, in that it was agreed and understood at the time the contract was entered into that the commission he was to receive was to be paid by the defendants from the sale of stocks and securities of the purchasing company or from the sale of oil produced from the property known in the record as the Hooten lease, so soon as they had been reimbursed for the expendi-

tures made in purchasing the property. The petition and amendment both alleged that J. H. McClurkin, E. T. Dickson, and C. R. Dickson, who executed the contract of February 26, 1919, were acting for the Seaboard Oil Company. After various preliminary motions had been overruled the defendants filed answer controverting the material averments of fact. On the trial judgment was rendered for the full amount claimed and the Seaboard Oil Company is appealing from that judgment.

Appellant assigns several errors in this court, but its main reliance is the refusal of the trial court to instruct the jury to return a verdict for the defendant at the conclusion of the plaintiff's evidence, and a similar ruling on a like motion made at the conclusion of all the evidence. The grounds of this contention are, (1) that appellee introduced no evidence to show that appellant's codefendants were acting for or on its behalf in entering into the contract of February 26th, and (2) if it be admitted that they were acting for appellant, the proof fails to show that there was a breach of the written contract or the contract as alleged by Huntsman in his amended petition. If either of these contentions is correct the motions for a directed verdict should have been sustained.

In disposing of the contentions it will be necessary to outline the evidence offered by appellee, and to discuss that introduced by appellant after the motion for a peremptory instruction was overruled at the conclusion of the plaintiff's evidence.

It appears that Huntsman had known McClurkin for some time before the negotiations that culminated in the contract of February 26th were entered into; that Huntsman was acting as a broker for the Oklahoma Producing and Refining Company, owner of the Hooten lease, and had an option to purchase that lease within a specified time at $150,000.00; that shortly before the option expired he opened negotiations with McClurkin with the view of selling the lease, and McClurkin with E. T. Dickson went to Scottsville on February 26th to look over the property. There were several producing wells on the property at that time, and after inspecting it and ascertaining the amount of production from the superintendent of the Indian Refining Company the contract of February 26th was made. Huntsman's option had but a few days to run and it became necessary for the parties to act promptly. Accordingly, McClurkin and

the two Dicksons left Scottsville· that afternoon and went direct to New York and while there purchased the property for $125,000.00.  $50.000.00 was paid in cash by McClurkin and he executed three promissory notes for $25,000.00 each for the balance of the purchase price. The property was purchased on March 4th but was not conveyed to McClurkin until March 6th.  On March 5th McClurkin entered into a contract with the American Securities Company and C. R. Dickson, H. A. Beason and E. T. Dickson, acting for themselves and on behalf of the Seaboard Oil Company, as follows:

"This agreement, entered into this 5th day of March, 1919, by and between John H. McClurkin, of Winchester, Kentucky, party of the first part, and the American Securities Company, of Norfolk, Virginia, a corporation of Delaware, C. R. Dickson and H. A. Beason, of Birmingham, Alabama, and E. T. Dixon, of Norfolk, Virginia, hereinafter known as parties of the second port; WITNESSETH, that WHEREAS, said John H. McClurkin did, on the 4th day of March, 1919, purchase a certain oil property located in Allen county, Kentucky, from the Oklahoma Producing and Refining Corporation of America, of 14 Wall Street, New York City, for the sum of one hundred and twenty-five thousand dollars ($125,000.00) cash, of which sum fifty thousand dollars ($50,000.00) was paid down, the balance of seventy-five thousand dollars ($75,000.00) being evidenced by three promissory notes of said McClurkin, all dated March 4th, 1919, for twenty-five thousand dollars ($25,000.00) each, bearing six per cent (6%) interest from date, and payable at the Liberty National Bank, New York City, the first being due April 4th, 1919, the second on May 5th, 1919, and the third on June 4th, 1919, any or all, however, payable at option of said McClurkin, any time before maturity, said deferred payments being secured by vendor's lien upon said properties; and,

"WHEREAS, second parties have purchased said Allen county oil properties from said McClurkin for and on behalf of the Seaboard Oil Company, a Delaware corporation, for the sum of seven hundred and fifty thousand dollars ($750,000.00) of its treasury stock of par value of ten dollars ($10.00) per share, with which corporation second parties have certain contracts for financing and developing its properties, and as such fiscal agents are in possession of certain of its stocks and bonds;

"Now, THEREFORE, in consideration of the sum of one dollar ($1.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, and for the further mutual covenants and agreements hereinafter recited, the said John H. McClurkin has bargained and sold, and does hereby agree to deliver proper assignments and transfers of all the leases, leaseholds and all other property in Allen county, Kentucky, transferred to him by the Oklahoma Producing and Refining Corporation of America to the Seaboard Oil Company of Delaware, upon the following terms and conditions being performed by the second parties, viz.:

"1. The second parties, for and on behalf of themselves and for the Seaboard Oil Company, hereby assume the repayment to said J. H. McClurkin the sum of fifty thousand dollars ($50,000.00) which was paid as first installment in purchase of said Allen county property, said sum to be realized from the sale of certain gold notes of the Seaboard Oil Company, now in possession of said second parties.

"2. The second parties, for and on behalf of themselves and the Seaboard Oil Company, hereby assume the payment of the three notes of twenty-five thousand dollars ($25,000.00) each executed by said J. H. McClurkin in payment for said Allen county properties and falling due April 4, May 5 and June 4, 1919, at Liberty National Bank, New York City, and to hold said McClurkin harmless by reason of any default in meeting said payments.

"3. The second parties for themselves and the Seaboard Oil Company hereby assume the payment within ten days from date the sum of three thousand dollars ($3,000.00) to R. O. Huntsman, Scottsville, Kentucky, for certain incidental expenses incurred in securing option on said Allen county properties, and second parties further agree to pay said Huntsman the sum of twelve thousand five hundred dollars ($12,500.00) as commission on the sale of said properties, in the manner hereinafter provided for.

"4. The second parties in order to secure the payments of the obligations recited in the foregoing paragraphs, hereby agree to deposit with W. H. Hartsough the sum of six dollars ($6.00) per share on all of said stock until the following sums shall have been paid by Hartsough from receipts of said sales, viz.:

"To the American Securities Co., $128,000.00 in cash, to Mr. J. H. McClurkin, $25,000.00 in cash, to the American Securities Co., $25,000.00 in cash, to Mr. R. O. Huntsman, $12,500.00 in cash, to Mr. J. H. McClurkin, $25,000.-00 in cash, payable in the order named upon the completion of which the trustee shall be relieved of the trust, and the balance of unsold stock returned to American Securities Company.

"5. It is further agreed that an effort will be made to pay a dividend on the treasury stock sold to the public, payable when and as sold.

"6. In accepting said stock and in acting as escrow trustee said W. H. Hartsough assumes no personal responsibility other than ordinary care of the stock and is to be held harmless by reason thereof.

"WITNESS our hands and seals this 5th day of March, 1919, issued in five originals.

"JOHN H. McCLURKIN (seal)
Party of the first part.

AMERICAN SECURITIES Co.,
By E. T. DICKSON, treasurer
(seal)

C. R. DICKSON (seal)
H. A. BEASON (seal)
E. T. DICKSON (seal)
Parties of the second part.

"The above trust is hereby accepted,
W. H. HARTSOUGH,

Escrow trustee, The Winchester Bank,
Winchester, Ky."

It was shown on the trial that the authorized capital stock of the Seaboard Oil Company was $5,000,000.00, but only $783,480.00 of that stock had been issued and $750,000.00 of that amount was placed in escrow under the agreement of March 5th. The deferred payments on the Hooten lease were made by the American Securities company on or about the dates that they became due. The deed to J. H. McClurkin from the Oklahoma Producing and Refining Company to the Hooten property was not, as we have indicated, made until March 6th, the day following the date of the contract by which the $750,-000.00 par value of the stock of the Seaboard Oil Company was placed in escrow. The $3,000.00 to be paid Huntsman under the contract of February 26th was

promptly paid and later there was delivered to him a voting trust certificate for 500 shares of the stock of the Seaboard Oil Company.

The facts as stated are not in controversy. Admitting them to be true appellant contends that there is no evidence of the essential fact that McClurkin and the Dicksons were acting for the Seaboard Oil Company in making the contract of February 26th. Examining the record with that point in view, it will be noticed that Huntsman testified that at the time the contract was made McClurkin and his associates stated that they were acting for the Seaboard Oil Company. He also relies on that part of the contract of February 26th which recites that they were acting for themselves and others and the clause by which they agreed that $5,000.00 par value stock of the Seaboard Oil Company should be issued to him. Another circumstance relied on by him is his letter of introduction to the Oklahoma Producing and Refining Company in which it is stated that McClurkin and his associates are representatives of the Seaboard Oil Company. But it is said for appellant that none of this evidence was competent to show agency for the Seaboard Oil Company, since it amounted only to declarations on the part of the alleged agents. L. & N. R. R. Co. v. Byrley, 152 Ky. 35; Conley v. Mayo, 157 Ky. 445; California Ins. Co. v. Settle, 162 Ky. 82, and other decisions are cited as denying the admissibility of such evidence. The rule in this jurisdiction is that the admissions of an agent cannot be introduced in evidence, either to establish the fact of agency or to show the extent of the agent's authority. The doctrine is sound and there is no justification for a departure from it. But in this case the record shows that there was no objection by appellant to the introduction of any part of the testimony mentioned, and, while a few exceptions are shown, they were not taken until after much of it had been introduced. On cross-examination of the witnesses who testified to the declarations of McClurkin and his associates, counsel for appellant required a reiteration of the statements of McClurkin in that respect, and compelled the witnesses to state in detail what McClurkin and the Dicksons said with regard to representing the Seaboard Oil Company in the transaction. Accordingly, appellant is not in position to complain of the testimony, since it was admitted without objection and largely before any exception to its admission was taken.

As to whether in these circumstances. it is entitled to any probative effect if standing alone need not be determined, for there is other evidence from which the jury was authorized to infer that McClurkin and the Dicksons were acting for and on behalf of the Seaboard Oil Company.

The prohibition against the admissions of an agent, as we have seen, is well settled, but a state of facts is presented here conceivably different from those shown to exist in the cases in which the rule has been strictly applied. It was proved that McClurkin was the president of appellant company, that Dickson was its general manager, and it may well be doubted whether the rule should be so rigidly enforced against the declarations of the chief executive and general manager of a company, who by reason of their official positions speak for the company, as against one who is not a high officer but claims the right of representation under a limited or special authority. Agency may be proved by circumstances. The Seaboard Oil Company acquired the property and took possession of it immediately after its purchase by McClurkin. A voting certificate for 500 shares of its stock was promptly issued to appellee as the contract of February 26th provided. These facts are corroborative of the declarations made by the officers of the company, and, leaving out of consideration the proven admissions of the agents, they, with other circumstances shown by appellee, seem to us sufficient evidence of the agency to warrant the submission of the question to the jury.

The plaintiff's proof developed the facts just referred to. The agency theory is greatly strengthened in the evidence offered by defendants. But aside from the circumstances mentioned there is no just reason why a corporation should be permitted to defend a suit on the theory that it is not bound by the acts of its highest executive officers, when it immediately secures for itself the benefits of those acts. This is especially true where the executive officers with their associates in the transaction own and control practically all of the capital stock of the corporation at the time of the transaction and, as in this case, on the face of the contract agree as a part of the consideration to issue 500 shares of the stock to the other contracting party. McClurkin and his associates at that time were in fact the Seaboard Oil Company. The contract of March 5th was prepared

and apparently entered into before McClurkin and his associates went to Norfolk, Virginia, the home offce of the Seaboard Oil Company, and before McClurkin acquired a deed to the property from the Oklahoma Producing and Refining Company. Thus it is seen that the Seaboard Oil Company acquired the lease before the deed was made to McClurkin and as soon as it was possible so to do, after it was purchased in New York. This clearly signifies that McClurkin and his associates were acting for the Seaboard Oil Company at the time the contract of February 26th was made, and at that. time had full authority so to act, confirmation of which is apparent from the arrangement entered into on March 5, 1919. In our opinion the evidence on the question of agency was not only sufficient to take the case to the jury, but was also ample to sustain the verdict.

This brings us to the second contention, which is that the evidence fails to show a breach of the contract of February 26th, even if it be conceded that McClurkin and the Dicksons were acting for the Seaboard Oil Company in entering into that contract. On this point it is said that there was no evidence to show there had been sufficient receipts from the sale of securities of the Seaboard Oil Company to reimburse McClurkin and the American Securities Company for the amount expended by them in purchasing the Hooten lease, and, if it be admitted that the contract between the parties provided for the payment of Huntsman's commission either from the sale of securities or the sale of oil from the Hooten lease, there was no evidence to show that so much as $125,000.00 worth of oil had been sold from the lease. The first proposition is correct. As to the second, the testimony of Newkirk, superintendent of the Indian Refining Company, which operated a pipe line used in conveying the oil from the Hooten wells, tends to show that $141,000.00 worth of oil was taken from the Hooten lease after its acquisition by the Seaboard Oil Company. His testimony was based in part on estimates of prices and quantities, but he was thoroughly familiar with the prices and he had in his possession a record of the actual output for a part of the time and stated that he was familiar with the amount of production at other times for which he did not then have the records. His testimony was competent, and was some evidence of monetary receipts from the sale of oil in excess of $125,-000.00. Appellee was not compelled to produce the

highest class of evidence under any circumstances or to produce record evidence when the record evidence was not in his possession and not accessible to him. It was his duty to introduce the best competent evidence available, and while the testimony of Newkirk as to the output was not the most reliable evidence that might have been offered under other conditions, it was competent evidence and was entitled to go to the jury for what it was worth. It may be observed here that neither was appellant's evidence as to the output for that period the best evidence that might have been introduced, for a record of the output had been made and surely that record, as well as the record of prices received, was available to the executive officers of appellant who testified. In our view of the case the question of the amount of the receipts for the sale of oil was for the jury. The verdict was arrived at on conflicting evidence of not un-, equal credibility and there is no reason for disturbing it on that account.

But without looking to that feature of the case it seems to us that appellee was entitled to a judgment. By the terms of the written contract of February 26th it was provided that his commission should be payable "out of the receipts from sales of securities of the purchasing company after the amounts advanced by the said second parties and their associates shall have been returned to them from said sales." The amount advanced was $128,000.00, $3,000.00 of which covered the cash payment to appellee when the transaction was closed. The contract contemplated the sale of the securities of the purchasing company and not the retention of them indefinitely. The second parties issued $750,-000.00 of the par value of the capital stock of the Seaboard Oil Company in exchange for the Hooten property.

It was manifestly contemplated by the contract that this stock should be sold, but McClurkin and his associates did not sell it. They say that they endeavored to sell some stock, but apparently that was treasury stock and appellee had no claim on that stock. Huntsman was entitled to his commissions out of the sale of the 75,000 shares of stock received in exchange for the Hooten lease. McClurkin, the Dicksons and appellant entered into the contract of March 5th, by which they made it impossible to sell any part of the 75,000 shares of stock until they had deposited with the trustee, Hart-

sough, the sum of $6.00 a share on all of the stock, and they further provided in that agreement not only for the payment of the purchase price of $128,000.00, but also for the payment of $25,000.00 to McClurkin and $25,000.00 to the American Securities Company before Huntsman could be paid any part of his commission. They put it out of their power to comply with the terms of the contract of February 26th. It is shown in the evidence of McClurkin that the stock of the Seaboard Oil company might have been sold at 60 cents on the dollar or at some reasonable price. He did not wish to sell it at that price, because, as he said, he did not believe it to be advantageous to the company. He also testified that he believed the stock was worth par. Accepting his statements as true, it may be asserted that the 75,000 shares of stock received as the price of the Hooten lease could have been sold promptly for more than enough to reimburse McClurkin and the American Securities Company and to pay the commission of Huntsman. The failure of appellant, McClurkin and his associates to sell the stock, and their act of entering into an agreement under the terms of which it became impossible for them to sell it within a reasonable time, amounted to a breach of the contract for which Huntsman is entitled to recover damages.

The Seaboard Oil Company is a party to the agreement of May 6th, and, if the evidence for appellee be accepted, it was the real party in interest to the contract of February 26th. Consequently it is guilty of a breach of that contract, and the amount of recovery to which the other party, Huntsman, is entitled is definitely fixed by the contract itself. So we conclude, independent of the question of production on the Hooten lease, that there exists a cause of action for the breach of the written contract of May 26th, and a judgment for $9,500.00 on that account is authorized.

Other errors suggested though not seriously argued by appellant are the overruling of the motion of appellant to require the plaintiff to elect between the causes of action alleged in the original and amended petitions, the overruling of the demurrer to the petition, and the admission of incompetent evidence. The petition, as originally drawn, stated a valid cause of action. Counsel have not pointed out any reason or ground for the suggestion that it is demurrable. Neither has any reason been given for the contention that there should have

been an election as between the cause of action set up in the original petition and that set up in the amendment. The amended petition merely sought to supply an omission in the original contract sued on. It alleged that by mutual mistake a part of the contract entered into was not incorporated into the writing of February 26th; that the writing of that date constituted the entire contract except that it did not state, as it was the intention of the parties that it should state, and by mutual mistake failed to do, that the plaintiff was to receive his commission after the sale of the securities of the purchasing company had been sufficient to reimburse those who had advanced the money to pay for the property, but should that not occur, then after sufficient oil was taken from the property to reimburse the purchasers. There is no inconsistency in the two pleadings. The amendment related to the subject matter of the original petition and with the original petition stated one cause of action.

The incompetent testimony referred to is that given by Newkirk in regard to the quantity and prices of oil taken from the property after appellant acquired it. We have already referred to that testimony. No objections were made to the questions that elicited it. The three or four exceptions appearing on the record were taken after a large part of the alleged incompetent testimony was admitted, and they seem to relate to references to a part of a record which the witness had in court and which he seemingly testified from. Counsel for appellant undoubtedly had the right to examine that record. The introduction of the record itself would have been competent. Appellant did not ask to have it introduced. In view of these facts it can not be said that the testimony was prejudicial.

Finding no error in the record and none being specified, except those that we have referred to, the judgment must be and is affirmed.