## McFarland's Administrator v. McFarland et al.

(Decided June 20, 1930.)

284

HENRY J. TILFORD and THOMAS C. FISHER for appellant.

JOHN C. WICKLIFFE, JR., HUMPHREY, CRAWFORD & MIDDLETON and A. M. MARRETT for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On March 15, 1923, Charles W. McFarland executed and delivered to his brother, Thomas J. McFarland, Sr., three promissory notes for $1,000 each, payable in one, two, and three years, respectively, with 6 per cent. interest from date. The notes were secured by a mortgage of even date on certain real estate belonging to the payor and located in the city of Louisville. Thomas J. McFarland, Sr., died testate and a resident of Jefferson county in the month of February, 1926. By his will which was duly probated in the Jefferson county court the Louisville Trust Company was nominated executor and trustee, and qualified as such.

This action was brought by the Louisville Trust Company, as executor, against Charles W. McFarland, to recover on the notes and enforce the mortgage lien. The defendant pleaded no consideration. During the progress of the action the Louisville Trust Company as executor settled its accounts, and the United States Trust Company, which had been appointed administrator with the will annexed, was substituted as plaintiff, and there-

after the action proceeded in its name. On final hearing the petition was dismissed, and plaintiff has appealed.

The evidence is as follows: Clara J. Seiberz, sister of Thomas J. McFarland, and also of Charles W. McFarland, after stating that she knew something about the transaction, deposed as follows: "Well, Brother Tom told me that he had a mortgage on Brother Will's property to the amount of $3,000.00, but Will didn't owe him anything, it was only given to protect brother Will when he was in this business, I think that is it—the business of Will's." She also said: "He told me that he hadn't loaned Brother Will any money, and he said, 'He doesn't owe me a dollar of this $3,000.00.' " On cross-examination she said that the conversation occurred some time between four and six years before she testified. It occurred at Tom's house. She believed there was some kind of accident and he was afraid they would come back on him. No one was present at the time of the conversation except her and her brother. The accident had already happened and there was no trouble about it afterwards. Mrs. Nellie Wilson, a cousin of Charles Taylor, formerly a resident of Louisville but then dead, identified a letter addressed to Mr. Leo J. Sandmann, Louisville, Ky., as being in Mr. Taylor's handwriting. The letter was filed with her deposition and contains the following: "There are some notes held by the Trust Company as executor against C. W. McFarland, brother of the decedent, amounting to something like $3,000.00. These notes are not a just charge against Wm. McFarland. They were executed to Tom McFarland, the decedent, to protect C. W. McFarland against a claim he feared would be filed against him growing out of one of his trucks running (over) a boy and injuring him, and no consideration was given by Tom McFarland for the execution of these notes. I was present throughout the whole transaction and know this to be a fact." Mrs. Mina L. Poynter deposed that she had lived in Louisville from her birth until May 1, 1928, and was Mr. Charles F. Taylor's stenographer from 1920 until his death in March, 1928, and acted as his secretary. At the time the mortgage was made Mr. Taylor told her that there was no consideration for it; that Mr. Charles W. McFarland anticipated that some claim would be made against him and executed the mortgage to his brother to protect himself should the claim be made. His brother merely accepted and held the mortgage to accommodate Mr. Charles

286

McFarland, just as one brother would help another. Mr. Thomas J. McFarland never made any statement to her. The statement was made by Mr. Taylor. After Mr. Thomas McFarland's death, Mr. Taylor frequently repeated to her that such a course was unjust and unfair, as there was absolutely no consideration for the mortgage. R. R. Boswell, vice president and trust officer of the Louisville Trust Company, testified that the notes sued on were in a safety deposit box of the Louisville Trust Company and that the box was opened in the presence of Mr. Charles F. Taylor and Tom McFarland, son of the decedent. When the box was opened, Mr. Taylor said not to list the notes as a part of the estate. On being asked ''Why,'' Taylor said that they were given by C. W. McFarland to T. J. McFarland to make it appear that it was a mortgage on a piece of property that he owned, and he did it to protect himself against a damage suit. Mr. C. F. Taylor told him that he had represented Thomas J. McFarland, Sr., at the time and in the transaction in which the notes were given. Charles F. Taylor had offices in the Louisville Trust Company and was one of the foremost attorneys at the Louisville bar.

For the plaintiff, Geo. J. Johnson testified that he was bookkeeper for the Security Bank. The records of the bank showed a deposit to the account of T. J. McFarland on October 11, 1921, of $3,494.60, the proceeds of a note that had been discounted. On the same day there was a charge of one check for $3,500, another check for $2.20, and a third check for $10.10. The deposit was entered on the passbook on October 10, 1921. The transaction of October 10th was made after banking hours, but was not closed until the next morning, and that accounts for the difference in dates. The records of the bank did not show to whom the check for $3,500 was paid, but the proceeds of the note which was executed by the McFarland brothers were credited to T. J. McFarland. Mr. Johnson's evidence was corroborated by the evidence of George Gutig, president of the Security Bank. Victor L. Bitter, who made the entries on the ledger stated that the ledger showed under date of October 11, 1921, checks for $10.58, $3,500, $10.10, and $2.20, and deposits under date of October 10, 1921, and October 11, 1921, were $580 and $3,494.60, the proceeds of the note of $3,500, that was discounted by the bank. The records of the bank did not show when the note was paid. It further appears from the stipulation of the parties that C.

W. McFarland executed the following mortgages: one for $500 to the Louisville Title Company dated October 28, 1916, recorded in the Jefferson county clerk's office and released on November 10, 1921; one to Thomas J. McFarland, Sr., for $3,500, dated October 11, 1921, and released March 15, 1923; one for $1,000 to the Louisville Trust Company, dated March 14, 1923, and released November 28, 1925; one for $3,000 (securing the notes in question) to Thomas J. McFarland, Sr., dated March 15, 1923, and not released; one to the Louisville Trust Company for $1,500, dated November 23, 1925, and unreleased. In the latter mortgage Thomas J. McFarland, Sr., united for the purpose of subordinating his mortgage for $3,000.

The exceptions to the deposition of Mr. Boswell and to the deposition of Mrs. Wilson with which the letter of Mr. Charles Taylor, the attorney, was filed, were properly sustained. The evidence consisted of narrative statements made by Mr. Taylor to Mr. Boswell, and of similar narrative statements contained in a letter to Mr. Sandmann, all of which were made long after the notes and mortgage were drawn, and not being connected with any act of agency were clearly inadmissible. Holzhauer v. Sheeny, 127 Ky. 28, 104 S. W. 1034, 31 Ky. Law Rep. 1238; Louisville, etc., R. Co. v. Sinclair, 171 Ky. 562, 188 S. W. 648; Ballard, etc., Co. v. Durr, 165 Ky. 632, 177 S. W. 445.

The chancellor overruled the exceptions to the deposition of Mrs. Seiberz, and the propriety of that ruling is called in question. Whether an attorney while engaged in drawing a mortgage may bind his client, the mortgagee, by an admission that there is no consideration for the mortgage made only to his stenographer, and not to or in the presence of the parties to the transaction, is, to say the least, a very doubtful question. The chief difficulty we have is in finding any evidence that Mr. Taylor was the attorney or agent of T. J. McFarland in the particular transaction. It is true that Mr. Taylor stated to Mr. Boswell that he represented Thomas J. McFarland, Sr., in the transaction; but no rule is better settled than that the fact of agency and the actual or apparent scope of the agent's authority to bind his principal cannot be shown by what such agent said or represented as to the extent of his authority. Peyton v. Old Woolen Mills Co., 122 Ky. 361, 91 S. W.

719, 28 Ky. Law Rep. 1303; Seaboard Oil Co. v. Huntsman, 196 Ky. 758, 245 S. W. 860; Muir v. Glossbrenner Motors Co., 211 Ky. 1, 276 S. W. 1058. Excluding this evidence, the only other circumstances tending to establish agency is the fact that Mr. Taylor prepared the notes and mortgage. Inasmuch as the attorney frequently performs this service at the instance of the mortgagor, the mere fact that he draws the notes and mortgage is not sufficient to show that he acted as attorney or agent for the mortgagee. Before the principal may be bound by an admission of his agent or attorney, the relation should be shown by satisfactory evidence. The evidence is not satisfactory where the circumstances are as consistent with his employment by the other party to the transaction as with his employment by the alleged principal. Having failed to establish by affirmative evidence other than the declaration of Mr. Taylor that he represented Thomas J. McFarland, Sr., in the transaction, it follows that his admission should have been rejected.

Excluding the statements made by Mr. Taylor, we have only the evidence of Mrs. Seiberz that her brother Tom told her that he had not loaned Will any money, and that Will did not owe him a dollar of the $3,000, and that she believed there was some kind of accident and he was afraid they would come back on him. On the other hand, we have the following situation: The defendant executed to Thomas J. McFarland, Sr., a mortgage for $3,500, dated October 11, 1921. This mortgage was to secure three notes for $1,000 each, and one note for $500. On March 14, 1923, C. W. McFarland executed a mortgage to the Louisville Trust Company for $1,000. On the next day the $3,500 mortgage was released and the $3,000 mortgage (the one in question) was executed. Though the bank records do not show that the check for $3,500 drawn by Thomas J. McFarland on October 11, 1921, the date of the mortgage, for that amount, was made payable to C. W. McFarland, the notes secured by the mortgage import a consideration, and want of consideration was not shown. Nor was it shown that the $3,500 mortgage which was released on March 15, 1923, the same day the mortgage in question was executed, was paid. On the contrary, the fact that C. W. McFarland obtained a loan of $1,000 from the Louisville Trust Company on March 14, 1923, the day prior to the release of the $3,500 mort-

gage considered in connection with the execution of the new mortgage for $3,000 on the day the $3,500 mortgage was released, justifies the inference, in the absence of a contrary showing, that $500 was paid on the $3,500 mortgage and a new mortgage was executed for the balance of $3,000. It is true the decedent lived for several years after the execution of the $3,000 mortgage without making any effort to enforce its collection. But these circumstances cannot be regarded as of great weight in view of the fact that brothers are inclined to be more indulgent to each other than to strangers. In addition to this, the notes were in decedent's safety box at the time of his death, and the record discloses no note nor memorandum showing that they were not a valid obligation against the defendant. Indeed, there is no evidence in the record that one of defendant's trucks ever injured a child. We have ruled that the plea of no consideration must be supported by clear and convincing evidence, Combs v. Combs, 130 Ky. 827, 114 S. W. 334, and we are forced to conclude that the uncorroborated evidence of Mrs. Seiberz, considered in the light of the circumstances to which we have referred, does not come up to this requirement. It follows that judgment should have gone in favor of appellant.

Judgment reversed, and cause remanded with directions to enter judgment in conformity with this opinion.

Whole court sitting.