## Bank Of Marshall County v. Boyd et al.

December 10, 1948.

J. Brandon Price and Price & Acree for appellant.

Nat Ryan Hughes and Wells Overby for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On December 12, 1946, Bill Boyd purchased from Ray Rudolph two used automobiles for $3,100. He paid Rudolph $2,500 in cash and gave him a check for $600 drawn on the Dees Bank of Hazel, Kentucky, and payable to the order of Rudolph. The transaction took place at Boyd's home in Paris, Tennessee. Rudolph was a resident of Marshall County, Kentucky, and on the same day the check was issued he presented it at the Bank of Marshall County in Benton, Kentucky. Before cashing the check the cashier of the Bank of Marshall County called the Dees Bank of Hazel and, upon being informed that the drawer of the check had sufficient money on deposit to pay the check, he paid to Rudolph $600 less the cost of the telephone call. The check was stamped "All prior endorsements guaranteed," and was forwarded to the Citizens Fidelity Bank & Trust Com-

pany of Louisville and by it to the Louisville Branch of the Federal Reserve Bank of St. Louis, which in turn forwarded it to the Dees Bank of Hazel where it was marked "Paid," and charged to the account of Bill Boyd. When the check was cashed at the Bank of Marshall County, the bank neglected to have Ray Rudolph, the payee, endorse it. Boyd sold the two cars which he had purchased from Rudolph, and soon thereafter learned that they had been stolen. He refunded to the purchasers the money which they had paid to him for the cars, and after discovering that the $600 check had not been endorsed by Rudolph, the payee therein, he brought this action against the four banks through which the check had passed to recover the amount thereof, to wit, $600. He alleged in his petition that the check was issued in part payment for certain goods, wares and merchandise purchased from Ray Rudolph, and that the consideration for the check failed. He further alleged that Ray Rudolph did not receive the proceeds of the check, but that some stranger was paid the sum of $600 by the Bank of Marshall County without endorsement and without identification. The case was tried before the court by agreement of the parties without the intervention of a jury. The court rendered a judgment in favor of the plaintiff, Bill Boyd, against the Dees Bank of Hazel for $600, and adjudged that the Dees Bank of Hazel recover that amount from the Bank of Marshall County. A motion to separate the findings of fact and law was sustained. After stating the facts relative to the issuance of the check by Boyd and the cashing of the check by the Bank of Marshall County without obtaining the endorsement of the payee, the court, in its statement of facts, said:

"Several days later plaintiff, Boyd, who had resold the cars discovered that they were stolen cars, and was required to make restitution to the parties to whom he had transferred title, since agents of the Federal Government took possession of the cars and arrested Rudolph, who now seems to be serving a sentence in one of the Federal penitentiaries.

"Plaintiff brought this suit seeking recovery from both banks upon the theory that consideration of the check failed and since they had not required the payee to endorse the check they were not holders in due course,

and that the Dees Bank should never have charged the check to his account. Pleadings were filed and issues made up and the court heard the case without the intervention of a jury by agreement of the parties.

"The Court further finds that Bill Boyd acted in good faith, and that the evidence was insufficient to charge him with receiving stolen property."

Appellant challenges the trial court's findings of fact, and asserts that the evidence fails to show a failure of consideration. It is said the appellee Boyd failed to prove that the two cars he purchased from Rudolph had been stolen, and that he had been compelled to reimburse the parties to whom he sold them. The fact that the cars had been stolen seems to have been generally known and was not contested at the trial. Many of the questions asked Boyd, both on direct and cross-examination, were based on the assumption that the cars had been stolen and that Boyd had made restitution to the parties who had purchased them from him. On direct examination he said that he first suspected the cars had been stolen when the F. B. I. began an investigation, and that he reimbursed the purchasers when the F. B. I. investigators told him "something was wrong." Upon objection by the defendants, the plaintiff's attorney was not permitted to pursue his inquiry concerning the plaintiff's transactions with the representatives of the Federal Bureau of Investigation. On cross-examination Boyd was asked these questions and made these answers:

"Q. Bill, how long after these cars were turned over to the FBI did you start asking about this check?

"Mr. Hughes: Object.

"The court: Overruled.

"To which ruling of the court counsel for the plaintiff then and there duly excepted.

"A. I don't know. Q. But it was sometime after they took the cars? A. Yes, but I wouldn't say what day it was because I don't remember what day it was."

Other questions were asked and answers made on the assumption that the cars had been stolen. The burden was upon the plaintiff Boyd to establish the absence

of consideration, McFarland's Adm'r v. McFarland, 235 Ky. 283, 30 S. W. 2d 958; Parris' Adm'r v. John W. Manning & Sons, 284 Ky. 225, 144 S. W. 2d 490, but we think that he met this burden and that the evidence sustains the trial court's finding of fact in this respect.

Appellant insists that its demurrer to the petition should have been sustained since the allegation "that thereafter the said consideration for the issuance of said check failed" is a conclusion of the pleader. The allegation, standing alone, is a mere conclusion, but it is coupled with an allegation of fact, i. e., the check was issued to one Ray Rudolph "as part payment for certain goods, wares and merchandise purchased from said Rudolph." Taken together, the allegations are tantamount to an averment that the plaintiff failed to acquire title to the property for which the check was issued in part payment. In Stivers v. Baker, 87 Ky. 508, 9 S. W. 491, 492, referring to section 90 of the Civil Code of Practice which provides that the petition "must state facts which constitute a cause of action," the court said:

"The pleader must state the facts constituting the cause of action. This is common law rule; and it is not only necessary to enable the opposite party to form an issue, and to inform him of what his adversary intends to prove, but to enable the court to declare the law upon the facts stated. It can not do so if a mere legal conclusion is stated."

The petition in the present case is not as concise, clear and certain as it might have been, but we think the facts were so alleged as to inform the defendants of what the plaintiff intended to prove and to enable them to form an issue. The defect did not affect the substantial rights of the appellant, and must be disregarded. Civil Code of Practice, section 134.

The crucial question in the case is: Can the appellee, drawer of the check, plead failure of consideration as against the appellant bank which cashed and endorsed it without obtaining the endorsement of the payee? KRS 356.049 provides:

"Where the holder of an instrument payable to his order transfers it for value without endorsing it the transfer vests in the transferee such title as the trans-

feror had therein, and the transferee acquires, in addition, the right to have the endorsement of the transferor. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the endorsement is actually made.''

The check was payable to the order of Ray Rudolph, and was a negotiable instrument. KRS 356.001, 356.185; Haggard v. Mutual Oil & Refining Co., 204 Ky. 209, 263 S. W. 745. No one can be a holder in due course of an instrument payable to a named payee or order without the endorsement of the payee. When appellant took the check without the endorsement of the payee, it took not as an innocent purchaser but subject to all defenses that might have been interposed against the payee, one of such defenses being failure of consideration. Bank of Commerce of Louisville v. Abell, 298 Ky. 736, 184 S. W. 2d 86; Fayette National Bank v. Meyers, 211 Ky. 185, 277 S. W. 292; Foster's Adm'r v. Metcalfe, 144 Ky. 385, 138 S. W. 314; Annotation in 87 A. L. R. 1178.

Appellant relies strongly on Bell v. Murchison National Bank, 196 N. C. 233, 145 S. E. 241, but the facts in that case differ from the facts in the present case. There, a check was drawn payable to the order of the Mizner Development Company, a Florida corporation. The check was cashed by the bank without the endorsement of the Mizner Development Company. The check was endorsed by Boca Raton Resales Corporation, and it received the proceeds. It was the plaintiff's contention that the payee, her creditor, did not receive the proceeds of the check, but it was shown that the two corporations were to all intents and purposes one organization and that the proceeds had been applied as the plaintiff intended. In a later North Carolina Case, Foxman v. Hanes, 218 N. C. 722, 12 S. E. 2d 258, 259, a check was procured by the fraudulent representations of the payee. The check was transferred for value without the endorsement of the payee. In a suit against the drawer by the holder, it was held that the plaintiff's suit to recover on the check was subject to all defenses the defendant would have had against the payee. The court said:

''It is well settled that where fraud in the execution of a negotiable instrument payable to order has been

established, the question of good faith in acquiring the instrument does not arise in a suit thereon by one who has taken the instrument without the indorsement of the payee. * * * He holds the instrument subject to any defenses available against the payee.''

This case presents a very difficult situation in that one of two innocent parties must suffer a loss due to the fraud of the payee of the check, but that does not operate to change the rule of law which must control our decision.

The judgment is affirmed.