SUNDAIL CONSTRUCTION COMPANY, INC., Appellant, *v.* LIBERTY BANK OF BUFFALO, Respondent.

Argued January 14, 1938; decided March 8, 1938.

*Hampton H. Halsey* for appellant. When defendant paid the check it did not pay its obligation to plaintiff, and it ever since has had, and now has, in its possession, the amount of money represented by this check, subject to the order of the plaintiff. (*Crawford* v. *West Side Bank,* 100 N. Y. 50; *Corn Exchange Bank* v. *Nassau Bank,* 91 N. Y. 74; *Anglo-South American Bank* v. *National City Bank,* 146 N. Y. Supp. 457.) The alteration made in the name of the payee of the check was a material alteration. (Cons. Laws, ch. 38, § 206; *Cohen* v. *Lincoln Savings Bank,* 275 N. Y. 399.)

*Mark N. Turner* and *Perry E. Wurst, Jr.,* for respondent. Upon certification at the request of the holder, the plaintiff, as the drawer of the check, was discharged, and the drawee bank became directly liable to the holder. (*First Nat. Bank* v. *Leach,* 52 N. Y. 350; *Gallo* v. *Brooklyn Sav. Bank,* 199 N. Y. 222; *Lyons* v. *Union Exchange Nat. Bank,* 150 App. Div. 493; *Davenport* v. *Palmer,* 152 App. Div. 761; *Carnegie Trust Co.* v. *First Nat. Bank,* 213 N. Y. 301; *Cullinan* v. *Union Surety & Guaranty Co.,* 79 App. Div. 409; *Anglo-South American Bank* v. *National City Bank,* 161 App. Div. 268; 217 N. Y. 726; *Lynch* v. *New Jersey First Nat. Bank,* 107 N. Y. 179.) The alleged alteration was, under the circumstances, an immaterial one, as the intended payee received the full benefit of the proceeds of the check. (*Hartford* v. *Greenwich Bank,* 157 App. Div. 448; 215 N. Y. 726; *Holub-Dusha* v. *Germania Bank,* 164 App. Div. 279; *Birmingham Trust & Savings Co.* v. *Whitney,* 95 App. Div. 280; 183 N. Y. 522; *Elliot* v. *Blair,* 47 Ill. 342; *Arnold* v. *Jones,* 2 R. I. 345; *Horst* v. *Wagner,* 43 Iowa, 373; *Skelton* v. *Filman,* 20 S. W. Rep. 71.)

CRANE, Ch. J.   This case was presented to the court upon an agreed statement of facts which in substance is as follows:

On November 29, 1933, the plaintiff drew its check, dated November 29, 1933, for the sum of $1,100, payable to the order of C. D. Blair.   The check was drawn upon its account in the Liberty Bank of Buffalo, the defendant. The check was delivered to one Frank A. Kreppel, with instructions to deliver it to the payee, C. D. Blair.   The check was made to " C. D. Blair " upon an arrangement with him whereby he was to use the check as a deposit upon a contract to be obtained by him for the benefit of the plaintiff, and, in the event the contract was not obtained, Blair was to return the check to the plaintiff. The contract upon which the check was to be used as a deposit, and upon which said Blair was to receive commissions, was never obtained.   Upon receipt of the check Kreppel caused it to be certified.   Then he altered the check in a material part.   He forged the words " & Co. Inc.," so that the payee of the check, instead of being C. D. Blair, became C. D. Blair & Co., Inc.   The check in this condition he presented to the Manufacturers and Traders Trust Company of Buffalo, New York.   It was presented through the clearing house to the defendant and paid.

The defendant made no inquiry of the plaintiff relative to the check or the forged name of the payee.   Neither did C. D. Blair authorize Kreppel to make the change. The plaintiff never consented to the change in the name of the payee or that his bank, the defendant, pay any one other than the original payee, " C. D. Blair," or order. The proceeds of the check were used by C. D. Blair & Co., Inc., to pay its own obligations, and neither C. D. Blair nor the plaintiff obtained any part thereof.   Blair and Kreppel were officers of the C. D. Blair & Co., Inc., and it is stated that Blair, over the telephone, directed Kreppel to deposit the check in the account of the corporation with the Manufacturers and Traders Trust Company and

immediately to pay the obligations of the corporation. Kreppel, however, had no authority whatever to alter the check in any particular. These are the facts from which we deduce the following conclusions:

When C. D. Blair received this check payable to his order it was under a special promise and agreement that he would use it in connection with procuring a contract for the drawer. If he had indorsed the check or authorized its deposit in his account the drawer could not complain because his bank paid it. Although Blair broke his agreement and misappropriated the check the drawer would have no remedy against his bank, as the check had been paid in due course of banking. The drawer, however, had the right to determine to whom the check should be paid and to whom its bank should give the money. It designated C. D. Blair, and the bank was unauthorized to pay anybody except Blair, his account, or the person holding the check by proper indorsement. Like other choses in action, the check could have been delivered to a third party without indorsement, but the third party to whom it was given would take it subject to all the equities, and could not collect on it or compel the drawer to pay, because the assignor, C. D. Blair, could not do so. The check had been misappropriated. Neither would the bank be justified in paying a stranger to the instrument without proper indorsement. C. D. Blair never indorsed the instrument, and if he had sought by mere delivery to pass the check over to his corporation, the drawer at least was protected to the extent that the corporation could not collect on the check either from him or his bank. The corporation, as a mere holder of the misappropriated check unindorsed, had no claim it could enforce.

When Kreppel changed the name of the payee from " C. D. Blair " to " C. D. Blair & Co., Inc.," it was as much a forgery and alteration as if he had scratched out the name altogether and had substituted that of " Jones." We would see at once that such alteration would not

justify the bank in paying the check. Such a mutilation of a check or a negotiable instrument could not be excused upon the plea that the original payee intended to indorse it to " Jones " anyhow. The payee's intention has nothing to do with such a matter, as a drawer is entitled to all the protection which the law affords when he passes his signature into circulation.

The Negotiable Instruments Law (Cons. Laws, ch. 38), section 205, provides: " Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration and subsequent indorsers."

And, by section 206, an alteration is material when any change or addition is made which alters the effect of the instrument in any respect. The change in the name of the payee is a material alteration, rendering the check immediately void. When the payee's name was changed from C. D. Blair to C. D. Blair & Co., Inc., it ceased to be a check or obligation of the drawer, the plaintiff. The defendant bank, therefore, was not justified in paying it.

The fact that this check was certified in no way changes these results. The certification simply means that the bank holds the money to pay the check and is liable to pay the check to the proper party. It in no way affects the law of forgery or of material change in the instrument or the relationships of the parties, except that the bank, by the certification, makes the amount of the check good to the rightful payee. The relation existing between a bank and its depositor is that of debtor and creditor, and the bank holds the fund, subject to be paid out upon the direction of the creditor according to the terms and conditions imposed by him. The bank's protection in the payment of checks consists in the fact that it has followed strictly the depositor's directions in disbursing his funds.

" Where a depositor has imposed the condition that his check shall not be paid without it bears his indorsement, the depository, if it pays it to a holder without such indorsement, runs the risk of the transaction, and takes the burden of showing that such holder has acquired in some way the lawful title to receive the funds. It may successfully defend such a payment if it can show that it made it to a person who, as against the drawer, was legally entitled to receive it, for, in that event, the drawer would suffer no damage thereby." (*Lynch* v. *First Nat. Bank*, 107 N. Y. 179, 184.)

The defendant in this case is unable to show that C. D. Blair & Co., Inc., was legally entitled to the payment of this check. (See, also, *Meuer* v. *Phenix Nat. Bank*, 94 App. Div. 331; affd., without opinion, 183 N. Y. 511; *Goshen Nat. Bank* v. *Bingham*, 118 N. Y. 349, 355; 3 Daniel on Negotiable Instruments [7th ed.], § 1798.) These authorities touch merely the question of the transfer of a certified check without indorsement, to one having legal title as holder, against whom there are no equities. We have more in this case, as I have above stated, the payee's name having been forged. This rendered the instrument void.

For the reasons here stated, the judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

O'Brien, Loughran, Finch and Rippey, JJ., concur; Lehman and Hubbs, JJ., taking no part.

Judgment accordingly.