In the Matter of the Estate of JAMES V. DI CROCCO, Deceased.

Surrogate's Court, Richmond County, April 11, 1939.

*Walter J. Klein,* for the petitioner.

*Herbert Ginzburg,* for the respondent.

BOYLAN, J. The decedent died on Sunday, November 15, 1931. At the close of business on Saturday, November 14, 1931, there was a balance standing to his credit in the sum of $1,019.62 with the Bank of Manhattan. On Monday, November 16, 1931, there was deducted from said account the sum of $355.48, and subsequently on December 21, 1931, there was deducted from said account the sum of $250. The bank deducted the said amounts in payment of notes which became due and payable at the bank on each of which notes the decedent was an indorser.

Letters of administration were issued to the petitioner on September 30, 1932. The bank as to both deductions raised a defense of the Statute of Limitations and as to the first deduction claimed that at the time of the deduction the officials of the bank had no knowledge of the decedent's death.

The petitioner contends that the deductions were fraudulent and that the Statute of Limitations is not a bar to the recovery because no demand was ever made upon the bank for said amounts and further because the administrator had no knowledge of the deductions. From the testimony adduced on the trial, the court is unable to agree with the petitioner that the deductions were fraudulent. Fraud may be defined as the gain of an advantage to another's detriment by deceitful or unfair means. It may be (a) actual, where there is deliberate misrepresentation, concealment or fraudulent intent, or (b) constructive, where the court implies it either from the nature of the contract or from the relation of the parties as in the case of a trustee and his *cestui que trust*. All the elements necessary to have fraud are not present in this case. Can these deductions be considered conversion? The court feels that they cannot. Conversion may be defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of the owner's rights. (*Melnick* v. *Kukla*, 228 App. Div. 321.) " In the ordinary cases of deposits of money with banking corporations or bankers, the transactions amount to a mere loan and the bank is to restore not the same money but an equivalent." (2 Carmody's N. Y. Prac. 732.) The relationship between a bank and its depositor is that of debtor and creditor. (*Sundail Construction Co.* v. *Liberty Bank*, 277 N. Y. 137, 141; *Matter of Hammer*, 237 App. Div. 497, 502; *Irving Trust Co.* v. *Leff*, 253 N. Y. 359, 361; *Critten* v. *Chemical National Bank*, 171 id. 219, 224.) If there was a fiduciary relationship between the bank and its depositor the Statute of Limitations would be computed from the time when the person having the right to make the demand had actual knowledge of the facts upon which the right depended. (Civ. Prac. Act, § 15, subd. 1.) This is not a case where the money on deposit was refused to the administratrix. The balance in the account has been turned over to her. " Where there was a deposit of money not to be repaid at a fixed time but only upon a special demand, or delivery of personal property not to be returned specifically or in kind at a fixed time or upon a fixed contingency, the time must be computed from the demand." (Civ. Prac. Act, § 15, subd. 2.) The petitioner complains of the deductions and asserts that her ignorance of the facts suspended the running of the Statute of Limitations until she had actual knowledge of the deductions. There are three exceptions to the general rule that ignorance of the facts constituting the cause of action does not ordinarily prevent the operation of the Statute of Limitations. These exceptions, in which case the Statute of

Limitations does not commence to run until the discovery of the facts constituting the cause of action, are (1) actions for reformation of a written instrument; (2) claims against a person acting in a fiduciary capacity; (3) actions based on fraud. The first exception has no application in this matter. As to the second and third exceptions the court has already dealt with these in this opinion.

When did the Statute of Limitations begin to run? The cause of action accrued on September 30, 1932, the day the petitioner was appointed administratrix. Surrogate WINGATE in *Matter of Maguire* (161 Misc. 219, 222; affd., 251 App. Div. 337; affd., 277 N. Y. 527), discussing section 57 of the Civil Practice Act, said, " In practical effect, therefore, the result of the section is to give twelve years less one day from the death of the testator or intestate for the enforcement of such a claim in the event that letters are never in fact secured, *or six years from the issuance of letters*, if these are actually obtained within six years from the date of decease."

In this matter letters of administration were issued on September 30, 1932, and the petition is dated October 31, 1938. The court holds that the defense of the Statute of Limitations is well taken. The court further finds that on November 16, 1931, the bank had no knowledge of the death of the decedent but on December 21, 1931, it did have; however, this becomes immaterial since the Statute of Limitations is a complete defense.

Petition dismissed. Submit decree.