JOHN J. SWEENEY, Respondent, *v.* THE NATIONAL CITY BANK OF TROY, Appellant, and NATIONAL BANK OF WATERVLIET, Additional Party Defendant.

Third Department, March 4, 1942.

*Draper & Bartle [Frederick E. Draper* of counsel], for the appellant.

*Cuthell, Appleby, Osterhout & Mills [Howard Osterhout* and *John B. Coman* of counsel], for the respondent.

* In so far as appealed from by defendants.—[REP.

HILL, P. J.   Plaintiff-respondent, Sweeney, has recovered a judgment for $5,347.17, with $1,208.49 interest and costs, against defendant-appellant, The National City Bank of Troy.   The basis of the action was that the bank on April 23, 1931, paid a check for $5,347.17 drawn by Sweeney's assignor, Joseph C. Behan, Jr., to Hanora Kennedy, whose purported indorsement was forged by O'Connell, a real estate dealer.   In discussing the somewhat involved events connected with this transaction, the surnames of individuals will be used, the appellant bank will be called the " National Bank," the National Bank of Watervliet, a defendant against whom a judgment was not found, the " Watervliet Bank," the Troy Savings Bank which enters into the discussion the " Savings Bank."

This action followed one wherein it was determined that a $6,000 mortgage which purported to be a lien upon premises located on Nineteenth street, Watervliet, N. Y., dated April 17, recorded April 21, 1931, was junior to a $4,000 mortgage upon the same premises dated April 23, recorded April 24, 1931.   Kennedy was the owner of the premises when the transactions began.   She authorized O'Connell to negotiate a sale for $10,000, payment to be made $6,000 in cash and $4,000 a first mortgage.   He arranged a sale of the premises to Norbert B. Shay and Ethel M. Shay, his wife.   They had no money with which to make the cash payment. On or prior to April seventeenth, O'Connell forged a deed which purported to convey the premises from Kennedy to the Shays. A $6,000 loan was negotiated with the Savings Bank.   Behan, its attorney, took the forged deed and the mortgage executed by the Shays, and caused them to be recorded.   The Shays directed the Savings Bank to pay the $6,000 proceeds of the mortgage to Behan, which he deposited with the appellant National Bank, and drew checks aggregating $652.83 to pay taxes, and the check in suit to Kennedy for the remainder of the fund, and delivered it to O'Connell, who forged the name of Kennedy as indorser, deposited it in the Watervliet Bank in which he had an account, received a cashier's check indorsed payable to Kennedy for $5,133.67 which he delivered to her, and retained $213.50 commissions to which he was entitled.   These proceeds, irrespective of the forgery, were received by the persons to whom Behan wished payments to be made.   The cashier's check was delivered to Kennedy on the day she executed the genuine deed to the Shays and received the mortgage drawn by them for $4,000, which, with the proceeds of the check, made up the $10,000 purchase price, less the tax payments.   O'Connell's forgery of the deed and the indorsement on the check did not become known until about November, 1937.

Behan's assignee has recovered from the National Bank because of its negligence in paying out his funds on a forged indorsement. The Watervliet Bank was relieved from liability because of the Statute of Limitations, six and a half years having elapsed after it cashed the check with the forged indorsement.

Appellant National Bank argues that it has a defense because payment was made to the persons legally entitled to receive the money and to whom Behan intended that it should be paid. (*Sundail Const. Co.* v. *Liberty Bank*, 277 N. Y. 137; *Lynch* v. *First Nat. Bank of Jersey City*, 107 id. 179.) Respondent was permitted to recover upon the theory that appellant's negligence in failing to detect the forgery of the Kennedy indorsement caused the long delay before exposure, thereby causing loss to Behan's client, the Savings Bank, it being assumed that disclosure of the facts on or shortly after April 23, 1931, would have permitted the Savings Bank to have bettered its position as the holder of a mortgage of questionable validity, and possibly for Behan to have stopped payment of his check or to have recovered the money from Kennedy. The measure of damage and the liability of appellant National Bank was fixed by the trial court in the same amount as though Behan had suffered loss through the payment of his check to persons not legally entitled thereto. The Savings Bank suffered the loss incident to having a mortgage junior to the Kennedy mortgage, through its negligence and failure to ascertain that O'Connell had forged the name of Kennedy to the deed dated April seventeenth. The only basis for argument that appellant was in any way liable therefor is that the Savings Bank might have received notice of its own negligence and have been given an opportunity to recoup had appellant National Bank detected the forged indorsement on Behan's check to Kennedy. This is speculative and tortious. O'Connell's motive for forging the Behan check to Kennedy is not clear. Had he delivered it, she would have paid his commissions therefrom. The fact that what she believed to be a cash payment made by the Shays came in the form of a check from Behan would not have disclosed the source of the money or that there was a forged deed. O'Connell was the only person with knowledge who was present at the time of the closing of the genuine transaction, as the Shays assumed that they were to obtain a deed of the premises by giving two mortgages and without a cash payment.

The appellant National Bank was the debtor of Behan and, under its obligation as a depository, was required to pay out his funds as he directed. Under the ruling of the trial court, it is held responsible for a loss to Behan's client, caused primarily by the

client's negligence in failing to discover O'Connell's forgery of the deed, and not because of its failure to discover the forged indorsement on the check.

Behan suffered no damage. His assignee has no cause of action against appellant. (*Sundail Const. Co.* v. *Liberty Bank, supra; Lynch* v. *First Nat. Bank of Jersey City, supra; Yanowe & Co., Inc.,* v. *American Exchange Irving Trust Co.,* 226 App. Div. 530.)

CRAPSER, HEFFERNAN and SCHENCK, JJ., concur; SCHENCK, J., concurs with a separate opinion, in which HILL, P. J., CRAPSER and HEFFERNAN, JJ., concur; BLISS, J., dissents, with an opinion.

SCHENCK, J. (concurring). Plaintiff is the assignee of one Behan. The cause of action stated in his complaint alleges that his assignor was a depositor in The National City Bank of Troy, defendant-appellant, maintaining therein a checking account. Plaintiff contends that the defendant-appellant paid a check of his assignor drawn to one Kennedy, upon which check the indorsement of Kennedy had been forged by one O'Connell.

The necessary facts concerning the transaction sued upon, and underlying that transaction, are as follows: O'Connell was the agent of Kennedy for the purpose of negotiating the sale of certain real property owned by Kennedy in Watervliet. In the course of his negotiations, O'Connell found prospective purchasers, a man and wife named Shay. After the Shays had agreed to buy the property for the sum of $10,000, O'Connell forged a deed running from Kennedy to them. The Troy Savings Bank took a mortgage on the property purported to have been passed by the fraudulent conveyance and agreed to lend to the Shays the amount of $6,000. Plaintiff's assignor, a lawyer who represented the Troy Savings Bank, was paid this amount by the savings bank on the written order of the Shays, with the apparent understanding that he would pay certain taxes and expenses connected with the mortgaged premises and the transaction, and pay the balance over to Kennedy on their behalf. The $6,000 check of the Troy Savings Bank, payable to the order of plaintiff's assignor, was deposited by him in his own general checking account in the defendant-appellant bank. After making the deductions necessary under his agreement with the Shays, he drew a check on his own account payable to Kennedy in the amount of $5,347.17. This check was delivered to O'Connell. The savings bank check was deposited in the account of the plaintiff's assignor on April 21, 1931, the same day that Behan drew his personal check payable to Kennedy out of the same account and delivered it to O'Connell.

O'Connell did not deliver the check to Kennedy but instead forged her indorsement on it and deposited it to his own account carried in a Watervliet bank in the name of "The O'Connell Agency." O'Connell then obtained from the Watervliet bank its cashier's check for $5,133.67, payable to his order in the name of The O'Connell Agency, and indorsed it over to Kennedy on April 23, 1931, and she accepted it in full payment of the amount due her. The discrepancy in amount arises out of the fact that O'Connell, with Kennedy's permission, retained $213.50 as his commissions for the transaction.

The Watervliet bank presented the forged check for payment to the defendant-appellant on April 23, 1931, and the defendant honored that check. On the same day Kennedy gave to the purchasers, the Shays, a true deed of the premises and took back from them a $4,000 mortgage to complete the purchase of the property.

Subsequently, a litigation concerning the priorities of the Kennedy mortgage over the savings bank mortgage was instituted, and it was adjudged that Kennedy's was a first mortgage and the savings bank was a second mortgagee.

The irregularity in the deed and the forgery of plaintiff's assignor's check was not discovered until November, 1937, at which time this action was instituted. In 1938 the Kennedy first mortgage was foreclosed and the premises sold for less than $4,000.

The plaintiff contends that the defendant-appellant, having paid the check in question on a forged indorsement is liable, for the amount of the check.

The relationship between Behan and the defendant was that of debtor and creditor. After Behan deposited moneys in his account, the title to those moneys passed to the appellant bank and the bank became Behan's debtor for the amount of the deposits so made. This principle is so well established that it does not require citation.

Arising from the debtor and creditor relation, the law fixes a contractual duty on the bank, by implying a promise from the bank to its creditor-depositor, that the bank will pay only in exact conformity with the depositor's directions. (*Critten* v. *Chemical National Bank*, 171 N. Y. 219; *Seaboard National Bank* v. *Bank of America*, 193 id. 26; *Crawford* v. *West Side Bank*, 100 id. 50.)

It necessarily follows that when payment is made by the bank upon a forged indorsement to one other than the payee named, the bank has breached the promise implied in law to pay only at the direction of the depositor. (*Shipman* v. *Bank of State of N. Y.*, 126 N. Y. 318; *Kobre* v. *Corn Exchange Bank*, 79 Misc. 212.)

On the facts as heretofore set forth, the defendant-appellant has breached that promise, and when the rigid rule of law as set out above is applied to the situation a cause of action arises.

However, the defendant-appellant contends that, since the payee actually intended by the drawer has in fact been paid the full amount, a complete defense to this action is raised under the facts of this case. I am in accord with this contention. The law has recognized certain equitable defenses to the strict legal liability of a bank paying on a forged check. *Shipman* v. *Bank of State of N. Y.* (*supra*) is one of the leading cases in this field, and the able briefs of counsel for both sides devote much time and thought to it. I understand the rule in the *Shipman* case to be that the bank is held on its promise to its depositor unless the depositor is estopped by his own acts or omissions, or unless the bank can show that the money which it paid on the forgery reached the payee for whom it was actually intended. As I interpret that decision, if it could be shown that the funds which the forger made good to the payee could be traced to the defendant bank, the basis for an equitable defense to the legal liability of the bank is established.

This tracing is, of course, entirely a matter of proof. The principle upon which the defense is based is undoubtedly to prevent the depositor from being unjustly enriched by collecting from his creditor-bank the sum which has, in fact, reached the payee to whom the depositor intended the fund to go.

The plaintiff-respondent's brief argues that a benefit must be shown to the drawer or expense on the drawee in addition to showing payment to the payee intended. He relies on the language of the *Shipman* case for his contention that this benefit or expense must be shown and he further states that it must be pleaded. It was not pleaded in the *Shipman* case, nor did the court indicate that such pleading was required.

I feel that the question of intention of the drawer is the controlling factor. Here the drawer intended that Kennedy receive this fund. To satisfy that intention, he drew a check to her order. Somewhat belatedly, she actually did receive that which Behan had intended her to have. Therefore, Behan cannot now claim against this defendant.

Let us suppose that Kennedy herself had actually indorsed and cashed this check. Surely, that money under the facts as presented to us could not be recovered from her now, nor would this action against the bank lie in spite of the fact that the savings bank suffered loss at the hands of the forger O'Connell on the forged deed.

For that reason I regard the loss to the Troy Savings Bank as foreign to this cause of action on a simple forgery of a check, and I think it is immaterial whether or not the savings bank, at the time the amendment to the complaint was suggested by the court, did or did not come in.

In the *Shipman* case the court said, " As it was not shown that such payment was made at the expense or to the injury of the defendant, or that the plaintiffs were benefited by it, beyond their whole loss, the cause of action stated in the complaint was not affected by the fact." The fact there referred to, in my opinion, was the fact that there was no evidence that the money which the forger had procured by his fraud ever reached the payee intended. Here, the payee has received the money procured by the forger's fraud and for that reason, I believe that that defense standing alone is a bar to this action.

The judgment should be reversed, with costs, and the complaint dismissed.

HILL, P. J., CRAPSER and HEFFERNAN, JJ., concur.

BLISS, J. (dissenting). Plaintiff's assignor Behan carried a checking account in the National City Bank of Troy in the name of " Joseph C. Behan, Jr., Special Account." On April 21, 1931, he drew his check on this account payable to the order of Hanora Kennedy for $5,347.17 and delivered it to William J. O'Connell, a real estate agent of Watervliet, to deliver to Mrs. Kennedy. O'Connell had the check certified on April 23, 1931, and then instead of delivering the check to the payee, he indorsed her name thereon and deposited it in an account of his own at the National Bank of Watervliet in the name of " The O'Connell Agency." The check was then indorsed and presented by the Watervliet bank to the defendant National City Bank of Troy which paid it and charged the amount against Behan's account. The forgery was not discovered until November, 1937, and in April, 1938, this action was brought by Sweeney as the assignor of Behan to recover the amount of the check and interest. The complaint alleges a cause of action based upon the foregoing facts. By way of defense the National City Bank of Troy alleged that the moneys in Behan's special account did not belong to him but were the property of the Troy Savings Bank and also that O'Connell had on April 23, 1931, paid over to Hanora Kennedy $5,133.67 of the amount he collected on the check on which he had forged her indorsement and that the remaining $213.50 of the proceeds of the check had been retained by O'Connell with the knowledge and consent of Mrs. Kennedy in payment of services rendered by

him to her. Upon the trial it developed that the alleged defenses arose out of these circumstances. O'Connell, a real estate agent, had permission from Hanora Kennedy to sell her Watervliet premises for $10,000 and he was to receive a $200 commission in case of sale. He arranged a sale to a Mr. and Mrs. Shay. O'Connell forged a deed of the property from Kennedy to the Shays and by means of this deed obtained from the Troy Savings Bank a loan of $6,000 to the Shays secured by their mortgage on the property. Behan was the attorney for the savings bank. Instead of the $6,000 proceeds of the mortgage being paid over to the Shays, it was by their order placed with Behan upon his understanding with the Shays that he was to pay certain taxes and expenses connected with the mortgaged premises and transaction and pay the balance over to Hanora Kennedy in their behalf. The savings bank gave Behan its check for $6,000, which on April 21, 1931, he deposited in his special account in the appellant bank. Out of this he paid $652.83 for taxes and other expenses and gave to O'Connell his check for the balance of $5,347.17 payable to Mrs. Kennedy. On April 23, 1931, O'Connell closed the true sale to the Shays at which closing the Shays, Mrs. Kennedy, her attorney and O'Connell were present. At that time Mrs. Kennedy gave to the Shays a true deed of the premises, took back from them a $4,000 mortgage and received from O'Connell on their behalf the Watervliet bank cashier's check for $5,133.67. O'Connell retained $213.50 as his commissions and accounted for the remainder of the $6,000 by the payment of taxes and other expenses which had in fact been paid by Behan. Hanora Kennedy and the Shays were innocent parties in these transactions. The Troy Savings Bank then believed that it had a first mortgage for $6,000 on the Shay premises and Hanora Kennedy then thought that she had a first mortgage for $4,000 thereon. O'Connell's forgeries were not discovered until early November, 1937. Hanora Kennedy died in November, 1937, but before she died she brought action against the savings bank and others in which it was adjudged that her $4,000 mortgage was superior to the $6,000 savings bank mortgage, the $4,000 mortgage was foreclosed and the premises were sold for less than enough to clear it so that the savings bank lost its entire loan. Both Behan and the savings bank have assigned their claims against the defendant bank to the plaintiff Sweeney.

There is no question but that the plaintiff is entitled to recover from the defendant bank the amount which it improperly paid out upon the forged indorsement unless he is estopped by O'Connell's payment to Hanora Kennedy of the proceeds of the check. (*Shipman* v. *Bank of State of N. Y.*, 126 N. Y. 318; *Prudential Ins.*

*Co.* v. *National Bank of Commerce,* 227 id. 510; *Strang* v. *Westchester County Nat. Bank,* 235 id. 68; *National Surety Co.* v. *Manhattan Co.,* 252 id. 247; *City of N. Y.* v. *Bronx County Trust Co.,* 261 id. 64.) It was the bank's contractual duty to pay out the money on deposit in Behan's special account only to a person designated by him and when it paid upon a forged indorsement of that person it was not fulfilling its contract. The only question here then is whether plaintiff is now estopped from recovering damages for defendant's failure to perform its contract because the proceeds of the check were actually paid by O'Connell to Hanora Kennedy. This equitable defense of estoppel must be based not upon the theory that the order of Behan was actually carried out but rather upon the proposition that Behan has already been benefited to the extent of the payment by O'Connell to Kennedy and, therefore, may not recover again this same amount as damages. He may not have a double recovery. Or, to put it the other way, he has not been damaged, because the amount of the benefit accruing to him from the payment of O'Connell to Kennedy is equal to the amount of damage which he claims by reason of the bank's breach of its contract.

It is obvious that O'Connell's two forgeries were all part of one plan or scheme and that each was necessary to the accomplishment thereof. They were so closely related as to be part of a single transaction. When Behan, out of an abundance of caution, made his check payable to Hanora Kennedy it was with the intent that it be actually delivered to and indorsed by her. His order was that the moneys which were thus being paid by the Troy Savings Bank as a loan to the Shays upon their mortgage should go direct to their grantor and become a part of the purchase price. Unquestionably the payment of these moneys direct to Mrs. Kennedy by the bank or its attorney, would have affected the result of the action in which Mrs. Kennedy sought to have her mortgage declared superior to that of the savings bank. The savings bank would have been in a much better position and who can say what would have been the result of direct knowledge on the part of Mrs. Kennedy that the $6,000 which she was receiving as the cash portion of her sale to the Shays was coming from the Troy Savings Bank or its attorney? The fake deed from Kennedy to Shay and the mortgage from Shay to the savings bank were then on record. Discovery of these facts would have stopped the entire transaction and prevented the loss to the savings bank. Delivery of Behan's check to Mrs. Kennedy would have revealed the source of the money which she was then receiving. I recite these possibilities only to show that each forgery by O'Connell contributed to and

made possible the acceptance by the savings bank of a mortgage based upon a forged deed and the payment by it of $6,000 therefor. The basic fault with the defense of estoppel in this instance lies in the fact that neither Behan nor the savings bank received any benefit from the payment by O'Connell to Hanora Kennedy of the proceeds of the check. At that time neither Behan nor the bank was indebted to Hanora Kennedy or the Shays. The first deed from Kennedy to the Shays was a forgery. There was no enforcible obligation from the bank to either the Shays or Kennedy and the bank owed them nothing. Thus when O'Connell paid Mrs. Kennedy the moneys which he had obtained by forging her name to the deed and check, Mrs. Kennedy was getting the bank's money without giving anything for it in return. O'Connell conferred no benefit whatsoever on either Behan or the savings bank by such payment. The payment by O'Connell to Hanora Kennedy not only did not benefit Behan or the savings bank but it was a part of the consummation of his plan whereby the savings bank loaned its money on a worthless mortgage. It made the loss possible. Therefore, this payment does not prevent a recovery by the plaintiff of damages resulting from the bank's failure to carry out its contract with its depositor. Behan has had no double recovery.

That there must be an equivalent benefit to the depositor before he is estopped from recovering the amount of his damage by reason of the bank's failure on its part of the contract, is the reason for the following language of Judge O'BRIEN in *Shipman* v. *Bank of State of N. Y.* (*supra*): " As it was not shown that such payment was made at the expense or to the injury of the defendant, or that the plaintiffs were benefited by it, beyond their whole loss, the cause of action stated in the complaint was not affected by the fact. It is, no doubt, true that payment or indemnity to the payees of checks diverted as these were, made by the wrong-doer, might, under certain circumstances, constitute a basis for equitable relief in an action of this kind, but the proof did not go far enough to warrant it in this case." (See, also, *La Montagne* v. *Bank of N. Y.*, 94 App. Div. 219; modfd., 183 N. Y. 173; S. C., 141 App. Div. 250; affd., 205 N. Y. 621.)

The appellant further contends that it was error to admit the evidence of the fraud upon the savings bank as not within the pleadings and that such error led to a judgment on a cause of action not sued upon and based wholly on the alleged unrelated loss of the savings bank. However, it was the defendant which, by its pleadings first alleged that the money on deposit in Behan's special account belonged to the savings bank and not to Behan and that the payment of these moneys by O'Connell to Kennedy prevented

a recovery here. Proof of the entire transaction was, therefore, not only competent but was made so by the defendant's attempt to establish these defenses. The plaintiff made out a *prima facie* case when he showed that the defendant bank had charged Behan's account with the amount which it had paid out on the forged indorsement. The remaining facts related to defenses and it was competent for the plaintiff to show all of the facts surrounding the payment by O'Connell to Kennedy. Only by so doing could he establish the insufficiency of the defenses claimed.

The judgment should be affirmed, with costs.

Judgment reversed on the law and facts, with costs, and complaint dismissed, with costs.

The court reverses the following findings of fact contained in the decision: Numbers 16, 17, 19, 21, and any findings of fact contained in the portion of the decision captioned "Conclusions of Law," and the conclusions are disapproved.

The court makes the following finding of fact: That the primary cause of loss of plaintiff's assignor's client, the savings bank, was the latter's negligence in failing to discover that the deed dated April 17, 1931, was a forgery, and the negligence of appellant in cashing the check with the forged indorsement did not make it legally responsible for the secondary negligence, if any.