OPINION OF THE COURT

Per Curiam.

Order entered August 13, 1980, dismissing the complaint as against Bankers Trust Co. and denying plaintiff’s *343 motion for summary judgment is modified to the extent of granting summary judgment to plaintiff Atlantic Bank of New York (Atlantic) against both defendants, on the warranty action, and, as so modified, affirmed, with $10 costs.
When a payor bank honors a check bearing a payee’s forged indorsement, may it maintain a warranty action under section 4-207 of the Uniform Commercial Code against collecting banks if the proceeds of the forged checks ultimately reach the payee and the only damage claimed by the payor bank is the aborting of a lien which may have been created in its favor had the payee’s signature been genuine? This novel question is presented by the case at bar.
On September 19,1978, plaintiff Atlantic issued a check drawn on itself in the sum of $5,803 payable to the order of “Queensboro Leasing Co. Inc. and Hans Eichler”. The check represented a loan from Atlantic to Eichler for the latter’s purchase of an auto from Queensboro. Of the $5,803, $3 was to go to Queensboro to pay its expenses in filing a lien statement to perfect a security interest in Atlantic’s favor. The back of the Atlantic check contained spaces for indorsement by Eichler and Queensboro. Underneath Queensboro’s indorsement space was a “seller’s statement” containing a declaration that the $3 was not part of the proceeds of the loan made to buyer, and also a promise by seller to file a lien statement on behalf of Atlantic.
Apparently the commercial practice in auto financing arrangements was for the car buyer and seller to jointly indorse the bank’s loan check. The buyer would then pay the proceeds of the check to the seller (for the auto) and the seller would file the lien statement thereby securing the bank. The buyer, pursuant to the terms of a promissory note, would then pay off his loan to the bank in installments.
Unfortunately for Atlantic, commercial practice did not follow its normal course in this case. Eichler, on September 20, deposited the Atlantic check into an account he controlled at defendant Israel Discount Bank Limited (I.D.B.). The check now bore Queensboro’s forged indorsement. *344 I.D.B. forwarded the check to defendant Bankers Trust Company (Bankers Trust) and received payment on it. Bankers Trust in turn presented the check to Atlantic and Atlantic paid $5,803 on the instrument. Meanwhile, Eichler, on September 22, 1978, drew a check of $10,000 on one of his accounts and sent it to seller Queensboro in part payment for the auto. Eichler eventually drew a second check on one of his accounts to complete full payment to Queensboro.
For a while Eichler also made payments on his auto loan to Atlantic. Those payments stopped in June, 1979. When they did, Atlantic checked to see if its auto lien had been filed by Queensboro. Of course, it had not. Queensboro had never received the Atlantic check, the reverse side of which informed it of its duty to file a lien notice on the bank’s behalf. After his default, Eichler disposed of the car; he was also insolvent.
Thus, as things stood on the eve of the initiation of the underlying litigation, Eichler had reneged on his Atlantic loan. The bank could not look to him for payment because he had no assets. The auto afforded Atlantic no security since it was not subject to a security interest. Seller Queensboro, by contrast, had received full payment for its auto sale.
On December 7, 1979, Atlantic instituted a breach of warranty action against Bankers Trust and I.D.B., and thereafter moved for summary judgment. In essence, Atlantic claimed that these two defendants had breached their implied warranty under section 4-207 of the Uniform Commercial Code, that indorsements on the check were genuine. The forgery of Queensboro’s signature, claimed Atlantic, damaged it in this sense: Had Queensboro received the check and properly indorsed it, Queensboro would have bound itself to file a lien statement, thereby securing Atlantic in the event Eichler was unable to pay off his loan. The forgery prevented Queensboro’s receipt of the check and with it, the creation of a lien in Atlantic’s favor.
I.D.B. and Bankers Trust asserted in opposition to Atlantic’s complaint that the damages plaintiff suffered were not redressable under the Uniform Commercial Code’s *345 breach of warranty provisions. The defendants contended that whatever damage resulted in the instant case was directly attributable to Queenboro’s failure to file a lien and flowed only indirectly from the forgery. Since Queensboro had been paid by Eichler from the proceeds of the Atlantic check, Queensboro, noted the defendants, under prevailing case law had no cause of action against Atlantic for the latter’s payment on the forgery. Hence, section 4-207 of the Uniform Commercial Code, reasoned defendants, could not be used by Atlantic to proceed against them.
Judge Danzig agreed with defendants and dismissed plaintiff’s breach of warranty claim against Bankers Trust and I.D.B. The Judge let stand for trial issues relating to I.D.B.’s liability in negligence and the question of damages.
We modify the lower court’s disposition by holding that summary judgment should be granted against I.D.B. and Bankers Trust on the breach of warranty action, and by affirming Judge Danzig’s order of a trial on the issues of damages and I.D.B.’s liability in negligence.
DISCUSSION
A brief capsulization of the liabilities and rights of the various parties in the banking chain on a forged indorsement will be helpful to an understanding of the issues in this case. When a drawee-payor bank disburses moneys on an instrument containing a forged indorsement and debits its drawer’s account, the bank incurs liability toward two parties. The debiting of a drawer’s account is wrongful as to the drawer because a bank may charge its customer’s account only on an item which is “properly” payable (Uniform Commercial Code, § 4-401). A check bearing a forged indorsement is not properly payable and the drawer has a cause of action against the drawee-payor bank (Tonelli v Chase Manhattan Bank, N.A., 41 NY2d 667). In addition, the payee whose signature was forged may sue the payor bank in conversion (Hillsley v State Bank of Albany, 17 AD2d 686).
The payor bank is not without its recourse, however. It may turn “upstream” and sue the collecting and depositary *346 banks on a breach of warranty theory under section 4-207 of the Uniform Commercial Code. That section provides that each collecting and depositary bank warrants to the payor bank that signatures on checks presented to the payor bank are genuine. The policy behind the warranty provision is to place the ultimate loss for the improper payment on the collecting banks, it is felt that these parties are normally in the best position to detect a forgery and prevent the fraud (see Girard Bank v Mount Holly State Bank, 474 F Supp 1225).
While section 4-207’s warranty is phrased in absolute terms, an equitable exception crucial to this case had been developed by the courts. Where the proceeds of a forged check reached the intended payee, there can as a general rule be no cause of action by anyone on the forged indorsement. The payee cannot sue in conversion since he has suffered no damage — he has, after all, received the moneys intended for him (Hillsley v State Bank of Albany, 24 AD2d 28). The drawer may not sue the drawee-payor bank for an improper charge on his account because, again, no damage has been suffered as the funds have been put to their proper use. And in a decision of this court (Bank Leumi Trust Co. of N. Y. v Marine Midland Bank, 93 Misc 2d 41), it was held that where the payee has received funds on a check bearing his forged indorsement, the payor bank may not sue the collecting banks for breach of warranty under section 4-207. Being immune from suit once the payee has received his funds, the payor bank has suffered no damage from the forgery and hence cannot reap undeserved benefits from the collecting banks.
The defendants and the lower court in the instant case, resting on the fact that the payee Queensboro received from Eichler the proceeds of Atlantic’s check, seek to employ the equitable doctrine which bars recovery under section 4-207.
We differ. In our view, there can be no disputing that the destruction of Atlantic’s potential lien was the direct and proximate result of the forged Queensboro indorsement, and that damage flowing from the loss of the lien is compensable under section 4-207 of the Uniform Commercial Code. Hillsley v State Bank of Albany (24 AD2d 28, *347 supra) is a case close in point. There the Court of Appeals held that when a potential lien is lost because of a forged indorsement, the equitable doctrine which bars suit when the proceeds reach the payee (see Sundail Constr. Co. v Liberty Bank of Buffalo, 277 NY 137) should not be applied.
Nor are we persuaded by defendants’ argument that the damage claimed by Atlantic is too speculative for recovery. Admittedly, a proper indorsement by Queensboro would not have automatically insured that Atlantic would have acquired a perfected security interest since the additional step of filing the lien was still necessary. This same situation, however, obtained in Hillsley, and the court held nonetheless that the extinction of the potential mechanic’s lien was an item of damage for which an action would lie. Accordingly, we feel that Hillsley implicitly rebuffs the contention concerning the speculative nature of Atlantic’s loss pressed by defendants here. (Cf. Uniform Commercial Code, § 2-715; Asphaltic Enterprises v Baldwin-Lima-Hamilton Corp., 39 FRD 574.)
Our final remarks address the amount of damages Atlantic Bank is entitled to recover. As a general matter, damages for breach of section 4-207 warranty would prima facie total the face amount of the check (Hillsley v State Bank of Albany, supra). In this case, Atlantic argues that since the moneys outstanding on the Eichler loan exceed the face amount of the check, it should recover the full $5,803, the maximum allowed by section 4-207 of the Uniform Commercial Code.
We disagree and feel that damages under section 4-207 should be measured by the monetary loss resulting from the destruction of Altantic’s lien. Atlantic should recover the moneys it would have realized in enforcing a security interest in the Eichler auto at, or a reasonable time after, buyer Eichler defaulted on his loan. As reflected by the bulk of our discussion above, the prime consequence of the forged indorsement was the thwarting of a lien to secure the bank’s loan. Thus, the damage sustained by the lien loss is the proper measure of compensation for a claim sounding in warranty.
Conceivably, moneys recoverable under the damage standard formulated above might fall far short of the face *348 amount of the check if, for some reason, the auto had been rendered valueless at (or shortly after) Eichler’s default. However, as noted earlier, Atlantic is prima facie entitled to the $5,803 face amount of the check and the onus rests on defendants to show that less than that amount should be allowed (cf. Hawkland, Practice Handbook on Commercial Paper, pp 88-89; McNaghten Loan Co. v Sandifer, 137 Kan 353).
Concur: Dudley, P. J., Hughes and Asch, JJ.